PATRICIA FISHER, APPELLEE, V. FRANCIS FISHER, APPELLANT.
176 N. W. 2d 667

Filed April 24, 1970. No. 37434.

Harmon & McCarthy, for appellant.

McCormack, Cooney & Mooney, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

CARTER, J.

This is an application to modify a child custody decree brought by the father against the mother who has the legal custody of the 4-year-old son of the parties under a divorce decree. The trial court denied the application and the father has appealed.

On June 28, 1968, Patricia Fisher obtained a decree of divorce from Francis Fisher and was granted the custody of Charles Fisher who was about 3½ years of age at the time the divorce was granted. It was found in the divorce decree that Patricia was a suitable and fit person to have the custody of Charles. There was no finding of fitness or unfitness of Francis to have custody of the child.

On December 6, 1968, Francis filed his application to modify the divorce decree by changing the care and custody of Charles from Patricia to himself and to relieve him of the child support payments awarded by the divorce decree. Francis alleged a change in circumstances which he asserts require that Patricia be divested of the care and custody of Charles and that he is a fit and proper person to have the child's care and custody.

The changed circumstances claimed are as follows: On December 17, 1968, Patricia gave birth to a child whose father was not her husband. That the birth of the child was the result of sexual relations with a married man whose name she refused to reveal and which occurred after her separation from Francis and before the divorce was granted. Patricia admitted the truth of the allegations but testified that she did not know the father was married at the time and never was in his company after she discovered that he was married. She said she never knew his business or where he lived and has no recollection of the place where the adulterous relationships occurred. She admits the truth of the facts that are readily provable and otherwise has little or no recollection of the surrounding circumstances.

The evidence will not support a finding that she failed to properly provide and care for Charles. Subsistance for herself and the two children is sustained by the child support award of $70 per month paid by Francis, an allowance of $140 per month granted by the welfare department as aid to dependent children, and by work-

ing 3 days a week which amounts to about $33 per week. On the other hand, there is no evidence that Francis is not a fit and proper person to have the care and custody of Charles. He owns a satisfactory home in which his mother and father reside with him. His mother is 62 years of age, in good health, is fond of Charles, and willing to care for him during his father's working hours and at other times as well. The issue here narrows down to a single question: Does the birth of the child out of wedlock, standing alone, require that Patricia be divested of the care and custody of Charles?

At the time the divorce was granted and the custody of Charles granted to Patricia, she did not reveal to the court or to Francis, or to anyone else interested in the case, that she was then pregnant by a man other than Francis. We think this is a change of circumstances within the meaning of the rule and authorizes the court to consider the merits of the application for a change of custody of the infant child. We adopt the rule announced by the Supreme Court of Iowa in a similar case wherein it is said: "We then turn to the question whether defendant's concealed misconduct was such a 'change in circumstances' as to permit modification of the decree. We hold that it was. The 'circumstances' existing at the time of the original decree are those known to the court and to the opposing party, or which could have been discovered by the exercise of reasonable diligence. We think our interpretation of a change in circumstances must be held to mean a change in 'known' circumstances including those which could have been known by the use of reasonable diligence." Harwell v. Harwell, 253 Iowa 413, 112 N. W. 2d 868. See, also, 27B C. J. S., Divorce, § 317(2), p. 538.

Under the foregoing holdings, the application filed by Francis is sufficient to raise the issue as to whether or not Patricia should be divested of the care and custody of Charles.

It is the contention of Francis that under the evi-

dence in this case Patricia is an unfit person as a matter of law to have the care and custody of Charles. He relies on the following cases to support his position: Beck v. Beck, 175 Neb. 108, 120 N. W. 2d 585, wherein it is said: "This court has stated the rule to be that where a wife is found to be guilty of adultery she is an unfit person to have the care and custody of her minor children as against the husband she has wronged." In Wolpa v. Wolpa, 182 Neb. 178, 153 N. W. 2d 746, the rule of the Beck case is adhered to. In Harwell v. Harwell, *supra,* the adulterous wife was given custody of the minor children of the marriage without invoking the rule that she was unfit as a matter of law.

We point out, however, that the rule that a divorced wife who has been guilty of adultery is unfit as a matter of law to have the care and custody of her children has been relaxed by the decisions of this court. Boyer v. Boyer, 183 Neb. 226, 159 N. W. 2d 546; Hausman v. Shields, 184 Neb. 88, 165 N. W. 2d 581. Where a wife has been guilty of adultery, the court will give consideration to three main points in determining if she should be divested of the care and custody of the children on account thereof: (1) The nature of the act and the circumstances surrounding the commission of the offense, (2) the probable effects of the offense as it relates to the future welfare of the children, and (3) the best interests of the children under all the circumstances of the case.

It is generally recognized that the interests of small children are best served by placing their care and custody with the mother if she is a fit and proper person. In this case, the mother has against her the charge of adultery which she admits. It is always true in this class of cases that the decision is most difficult. There is no certain yardstick by which the best interest of the children can be measured. The problems resulting from a broken home arise through no fault of the children and a court in attempting a decision that is calculated to do

the least harm to the children is surrounded by uncertainties and emotional considerations that try the conscience of the court.

It seems clear from the record in this case that the father and grandparents of Charles are of good standing and unblemished character, and fully fit persons to have the care and custody of Charles. Likewise, the mother is a fit person to have the care and custody of Charles except for her admitted adultery and the birth of an illegitimate child. The record shows that Patricia engaged in adulterous acts with one man, which are reprehensible, but it does not indicate a continuing and indiscriminate relationship with the opposite sex. Her testimony is that she has ceased such immoral acts. If she has not, of course, a second application for a modification of the decree would, in all likelihood, be indefensible. The child, Charles, is only 4 years of age and, at this age, needs the care and affection that only a mother can bestow. If only the wishes of the mother were at stake, the divesting of the mother's care and custody of Charles would be less difficult.

Here the primary concern is how to subserve the present and future interests of this 4-year-old boy who is the innocent victim of a broken home. What appears to be best for the child under all the circumstances of the particular case, after giving consideration to the rights of the parents, must be of serious concern to the court. We have, of course, given weight to the findings and judgment of the trial court. The decision of the trial judge is peculiarly entitled to respect. The court saw all the parties and witnesses; it was in closer touch with the situation than this court which is limited to a review of a written record. While this case is triable de novo in this court, we cannot overlook the fact that the judgment of the trial court is entitled to great weight in determining the best interests of children in custody proceedings. Reasonable visitation rights were awarded the husband by general terms. Under this record, they

should be liberally interpreted to insure the well-being of the child. After giving consideration to all the foregoing factors, we find no controlling reason to interfere with the judgment of the trial court.

AFFIRMED.